____FILED          ____LODGED
____RECEIVED    ____COPY

NOV 27 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

PABLO A. CASTELLANOS
JUDITH T. CASTELLANOS
16809 S. 44TH STREET
PHOENIX, AZ 85048
480-205-4035
Judy.Castellanos@hotmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, Husband and Wife,<br><br>Plaintiff,<br><br>v.<br>Encore Credit, et, al.,<br><br><br>Defendant. | CASE No: CV-17-02428-PHX-SPL<br><br><br><br>**RESPONSE TO MOTION TO DISMISS FIRST AMENDANT COMPLAINT-JP MORGAN CHASE BANK, N.A. AND CALIFORNIA RECONVEYANCE COMPANY** |

## I.       INTRODUCTION

Plaintiffs ( the "Castellanos"), hereby file their response to the Motion to Dismiss First

Amendment Complaint (the "Motion') filed by JP Morgan Chase Bank, N.A. and California

Reconveyance Company. The motions fails to demonstrate that any of Castellanos should be

dismissed.

## II.       FACTUAL BACKGROUND

Facts needed for the determination of the Motion are discussed throughout this Response.

However, a few facts are set for here, for easy reference.

1

- 1-19-07 Deed of Trust with Encore Credit Corporation as the Lender, and the nominee as MERS, is signed, #12 on First Amendment Complaint (FAC). (key provisions)

- In 2007 Encore Credit Corporation was acquired by Bear Stearns Residential #2 FAC

- 1-19-11 Trust, into which the loan was alleged sold, closed #39 FAC

- 1-29-08 Trust, into which loan was alleged sold, dissolved #24 FAC

- Certificateholders of the Trust owner the Note/are the Lender #30 FAC

- Trustee of the Trust is supposed to possess the Note  #27 FAC

- Arizona statute defines "beneficiary" as the person whose benefits the trust deed is given #18 FAC

- MERS  was never the true beneficiary under the DOT because it never possessed the Note and was never the Lender secured by the DOT #18 Steinberg V McVey ex rel. County of Maricopa, 234 Ariz. 125, 318 P.3d 419, 427 n. 9 (Ct. App.2014)(rev. denied Sept. 23, 2014) (MERS does not originate or lend money for home loans.")

III.    LEGAL ANALYIS

**A.  The Standard Which Must Be Followed in Deciding This Motion to Dismiss**

At the motion to dismiss state, "the Court assumes that all facts alleges in Plaintiff's Complaint are true. Assuming the veracity [of] Plaintiff's representations, the Court then asks whether the allegation contained in the Complaint are 'plausible' to the extent a sufficient legal claim has made out. Blau v. America's Servicing Co., 2009 WL 3174823 at * 3(D. Ariz  Sept. 29, 2009). See also, Corvello v Wells Fargo Bank N.A. 728 F. 3d 878, 884-885 (9th Cir. 2013)(the court must assume the allegation in complain are true, and refuse to consider contradictory "facts" argued by the bank, as "such a defense presents a factual dispute that cannot be resolved [at the motion to dismissed state]."

Federal courts in diversity matters must follow state law, even if not from the highest court of the state, and even if the federal court does not agree with the decision. West v Amercian Tel, & Tel. Co., 311 U.S. 233, 236-37, 61 S. Ct. 179 (1940).

## A.  A.R. S. § 33-811 Bars all Plaintiffs' Claims

Defendant benefit from the acts of failing to provide Plaintiffs proper notice of pending foreclosure. When they knowingly knew Plaintiff did not reside in the State of California. Especially when all prior notifications had been sent to Plaintiffs home at 16405 S. 43rd Place Phoenix, AZ 85048.

On July 21, 2016, a sign was posted on Plaintiffs front door. That notice indicated, "Property was now under the management of JM Realty LLC 4902 E. McDowell Road #103Z, Phoenix, AZ 85008. It further stated to call Joseph Mahoney at 480.785.5612 for information or event of Emergency, Please call within 7 days from this date_____.

Plaintiffs became aware that their home of 20 years had been sold without their knowledge via a complaint they filed with the Arizona Attorney General's office on July 21, 2016. Plaintiffs received a copy of the postponement on August 12, 2016. Plaintiffs were deprived of their due process. Curties V Richardson 212 Ariz. 308 (Ariz. Ct. App. 2006) "Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaning full matter. Comeau v Ariz. State Bd of Dental Exam'rs, 1996 Ariz, 102, 106 X20, 993 P. 2d 1066, 1070-71 (App. 1999). Due Process also entitles a party to offer evidence and confront adverse witness. Application of Levine, 97 Ariz, 88, 91-92, 397 P. 2 D. 205, 207 (1964). Due process requires that deprivation of a significant property interest to be preceded by both adequate notice and a meaningful opportunity for a hearing. See Sniadach v Family Fin.. Corp.,395 U.S. 337, 89 S. Ct.

1820, 23 L. Ed. 2d349 (1969) (hearing must be aimed at establishing the validity, or at least the probable validity, of the underlying claim) See exhibit A and B.

On January 9, 2017, at the time of the Emergency Motion to Writ of Restitution, Plaintiffs did not have the information from the Office of the District Attorney Orange County. Plaintiffs received notification from Office of the District Attorney Orange County District Attorney's Office on March 27, 2017. Such letter indicates, "The Orange County District Attorney's Office investigated a fraudulent loan modification company by the Name of National Preservation Center…. On March 16, 2016, the Orange County District Attorney's Office served a search warrant upon the location… As a result of the investigation, NPC was dismantled and no longer operating as of this date." Therefore, the letter that Select Portfolio purportedly sent on July 1, 2016 was not accepted at that location. The letter from the Office of the District Attorney further states, "I was made aware by the UPS center management that they were no longer maintaining correspondence on NPC's behalf.

Defendants knew or should have known Plaintiffs were not going to receive the postponement of the sale of their home if it was mailed to California a place where Plaintiffs have never resided. Defendants were fully aware that all prior correspondence had been mailed to Plaintiffs address in Arizona-16405 S. 43rd Place Phoenix, AZ 85048.

Plaintiffs are seeking an order from this Court, finding that the judgement of foreclosure was obtained in violation of Plaintiffs Constitutional rights; was obtained by means of fraud; and wants an order setting aside the judgement of foreclosure that was fraudulently obtained, and obtained in violation of the US and State Constitutional Rights of the Plaintiffs including, but not limited to 14th Amendment Due Process and Constitutional Violations. Plaintiff brings this under the Federal Rule of Civil Procedure Rule 60 (b) Grounds for Relief form a Final

4

Judgement Order, (1) mistakes, inadvertence, surprises, or excusable neglect (2) newly

discovered evidence that, with reasonable diligence could have not been discovered in time to

move for a new trial under Rule 59 (b); (3) fraud (whether previously called intrinsic or

extrinsic), misrepresentation or misconduct by opposing party; (any other reason that justifies

relief.

Plaintiffs view A.R.S. § 33-811 (C) as unconstitutional because it deprive the Castellanos

from thier due process. Roman Catholic Church of Anthony of Padua v Pennsylvania R. Co., F.

897, 907-08 (3rd Cir. 1913).

Had Plaintiffs received the notice, they would have taken step to save their home had they

known the foreclosure was imminent, such as contacting the defendants repeatedly to determine

what option were available to them, consulting a lawyer to learn about their rights regarding

foreclosure and to discuss bankruptcy and other legal options, insisting that defendants allow

the Castellanos to resume an earlier loan modification, and investigation refinancing or short

sale options.

### B. CHASE NOR CRC RECORDED ANYTHING AGAINST PLAINTIFFS' PROPERTY AFTER OCTOBER 2012

Let the courts not be fooled that since Chase and CRC did not record any documents after

October 2012; they are still a party to this action. Chase and CRC cannot remove themselves as

the same operative facts deal with contracts. Without Chase and CRC recording the documents

in the Maricopa County Records; the other defendants could have not acted without their

assistance of Chase and CRC; and without Chase's unfair and deceptive acts and practices

Plaintiff would have not been ejected from their home.

1.      Chase and Plaintiff entered into an agreement to make three payments of $2,692.45 for October, November and December of 2013, following which their loan would be evaluated for a loan modification.

2.      Plaintiff made the first two payments over the phone with a Stacey a representative from Chase and the second payment with Aaron Thomas their Customer service representative.

3.      On 12/12/12, Plaintiffs called Chase and spoke with Susan Kent to make the third payment. Plaintiffs were informed their account was in suspense. Therefore, Chase was unable to process the payment. We informed Ms. Kent we would mail our payment. No objection was raised as to the form of payment.

4.      On 12/12/12, Plaintiffs spoke to Rick Kincaid who informed them that there was no need to send the third payment since three payments had already been received. Plaintiffs' were confused, Mr. Kincaid stated Chase puts customers' money in "suspense" and applies it to the payment. Plaintiffs went ahead and mailed 3rd payment to the Chase P.O. Box 469030/Glendale , CO 80246-9030.

5.      In the mist of making their payment, Plaintiffs received not one approval of their loan medication but two on November 27, 2012 and one on December 24, 2012; which they signed and sent back pursuant to their instructions.  In Moore v Mortgage Electronic Registration Systems, Inc. {174} 848 F. Supp.2d 107 (DH.H. 2012) the court held that borrower sufficiently stated a fraud claim where borrow alleged that the services sent them two letters, one stating that the servicer's goal was to help keep them in their home and second providing that modification approval would take up to thirty days. The borrowers alleged that the servicer knew or should have known that the statements in the letter were

6

false and that in reliance on those statements the borrowers wasted time, resources, and money in pursuit of a modification that never materialized. See Exhibit A

6.    On 1/4/13; Plaintiff received notification that Chase had not received 3rd payment; thus we had 15 days to send it again. On 1/16/13; Plaintiff called to make a payment over the phone. The lady who answered stated she could not take the payment as our loan was "under foreclosure."

7.    1/17/13; Plaintiffs speak to Aaron Thomas to convey to him the 3rd payment was sent next day delivery. He informs us to just wait until Chase sent the final notification of the modification. Same day, Plaintiff pick up the mail; Chase sent a letter to Plaintiffs stating "you not eligible for mortgage loan modification." Plaintiffs were still under the timeframe to send their 3rd payment; based on the 1/4/13 letter.

8.    1/21/13 Plaintiffs received a letter from Chase; in that letter it was Plaintiffs third payment returned indicated "Delinquent check control." Same day Plaintiff spoke to Lindsay who informed Plaintiffs she would be sending an email to manager as she strongly believed this was an error on Chase. See Exhibit B

9.    1/25/13 Plaintiffs received another letter from Chase. This letter contained the check that sent over night.

10.    1/28/13 Plaintiffs spoke to Aaron Thomas at Chase who informed them that their loan modification was denied because Plaintiffs failed to comply with the payment requirements. Plaintiffs informed Mr. Thomas they had complied with everything. Mr. Thomas stated Plaintiff checks were invalid.  Yet, the notification only states, "insufficient to cure the default." See Exhibit C

11.     2/13/13 Plaintiffs spoke to Willy Harris in the Research Dept. who told Plaintiffs

Chase had made a mistake and should have honored the checks and the loan modification.

He further stated he was going to follow-up with this. Instead of Chase correcting their

blatant errors; they sent Plaintiffs a letter stating they had their home under foreclosure and

transferred out loan to Select Portfolio. "In an action on a contract plaintiff has the burden

of proof to show, 1) a contract, 2) a breach, and 3) damages," Thunderbird Metallurgical,

Inc v Ariz. Testing Lab., 423 P.2d 126 (Ariz.Ct. App 1967) A loan agreement violates the

Arizona Statute of Fraud, unless it is in writing, See e.g. Best 176 P.3d at 698-99;

Executive Towers, 439 P.2d at 305.

Chase obtained Plaintiffs' money under the false pretense that Plaintiff could be

evaluated for a loan modification after making three payments and the reneging on the

agreement. False representing the reason for the return of Plaintiff's 3rd agreed payment, for

the purpose or with the effect of attempting to create a fictitious record justifying reflection

of the payment justifying rejection of the payment.

Chase engaged in such conduct for the purpose of obtaining money from Plaintiff and

deprived Plaintiff of their home. Shortly after the loan was transferred to Select Portfolio,

Plaintiffs sent a letter 6/1/03; requesting for Select Portfolio (SPS) to honor the loan

modification. In Hauf v HomeQ Servicing Corp {783} 2007 WL 19657 (M.D. Ga Jan. 23,

2007) the court refused to dismiss the homeowners' claim against the servicer for it repeated

and frustrating refusal to honor the forbearance agreement entered into between the

homeowners and the previous servicer. SPS keep requesting for Plaintiff to send another

Loan Modification; which they did and only to be told paperwork is missing, don't qualify

based on fica score, etc.  This went on from 2003-2016; until Plaintiff called SPS on 2/12/16

and spoke with Kris Krukowski who informed them that no matter what Plaintiff submitted they were not going to honor the Loan Modification as the owner would not agree to it. Alternatively, the Castellanos have plead an equitable exception to the running of the statute of limitation by alleging, e.g., the discovery rule, equitable tolling, fraudulent concealment, continuous violation, or continuous accrual. See Aryeh v Canon Bus. Solutions, Inc., 55 Cal 4th 1185, 1192 (2013). In addition, Plaintiffs contacted the Consumer Financial Protection Bureau,  and HUD to try to get assistance with this issue. This was done from 2003-2016. Plaintiffs asked for the name and number of that Trusts. Plaintiff were informed it was propriety. As to the equitable exceptions, equitable tolling allows a plaintiff to extend the limitation periods by showing that there was "excusable delay," i.e. that " a reasonable plaintiff would not have known of the existence of a possible claim within the limitation period." Lukovsky v City & Cnty. of San Francisco, 535 F. 3d 1044, 1051 (9th Cir. 2008) (citation omitted). Defendants took action "above and beyond" the misconduct giving rise to the claim and that such actions prevented Plaintiff from filing on time, Id.

   During this period of time, Chase allowed Plaintiff credit to be harmed, unable to refinance their home or be able to purchase another home. Plaintiff's interest rate with the other lender were raised and some credit was even closed. Unable to purchase a car with a zero interest. Having to spending money on attorney fees. Lose of home, repairs made to the home.

### C.   PLAINTIFFS' A.R.S. §33-420 Claim.

   Plaintiffs were made to believe that Chase would honor their Loan Modification and then subsequently returned their last payment; though it was sent within the time required by the letter. Plaintiffs were also made to believe the Select Portfolio would honor or correct the

mistake Chase did. Chase and SPS lured Plaintiff into defaulting on their loan with the prospect of a loan modification and then negligently administered their application for the modification, causing them to fall behind on their payments that is was no longer possible to reinstate their loan. Thus, Chase conduct ultimately led to the foreclosure of their home. Restatement (Second) Tort 323 (1965); see also McCute hen v Hill, 147 Ariz.401, 404, 710 P.2d 1056, 1059 (1985); Lloyd, v State Farm Mut. Auto Ins. Co., 176 Ariz 247, 250, 860 P.2 1300, 1303 (App.1992).

Only to find out on February 2016 that SPS would not release the name and number of the trust who owns the loan as it was propriety. As to the equitable exceptions, equitable tolling allows a plaintiff to extend the limitations period by showing that there was "excusable delay, "i.e. that a "reasonable plaintiff would not have known of the existence of a possible claim within the limitations period. "Lukovsky v City & Cnty. of San Francsico, 535, F3D 1044, 1051 (9th Cir. 2008) (citation omitted). If a plaintiff show excusable delay, equitable tolling will "extend the statute of limitations for filing suit until the plaintiff can gather what information is needed." Id. Plaintiffs, not being in the mortgage lending or mortgage loan acquisition business, reasonable relied upon the written statement of Defendant Chase and CRC.

Without the Note and DOT, there would be no loan and no controversy. The foundation upon which this lawsuit rests, are those two contracts; they must be enforced as written. "A valid contract must be given full force and effect even if its enforcement is harsh." Issak V Massachusetts Indern. Life Ins. Co. 101 Ariz 581, 584, 623 P.2d 11, 14 (in Banc 1981) (citing Goodman v Newzona Inv Co., 127 Ariz. 470, 421 P.2d 318 (1966)). A court may not "revise, modify, alter, extent, or remake; a contract. Id. It is interesting that the Moving Defendants

now seek to escape the application of the terms of the very contracts which they alleged them

the right to foreclose.  Seeking to avoid application of contract terms, the Moving Defendants

argue that those terms are somehow "unwarranted legal conclusions." Such an assertion is

absolutely false, and the Steinberger Court easily recognized this. [O]nly the 'true', legally

authorized trustee may by virtue of his position, exercise the power of sale." Steinberger, 318

P.3d at 429 n.13. The Moving Defendants continue to refuse to recognize the binding effect of

Steinberg, directly on-point.:

Specifically, the complaint alleges that Respondents failed to quality as the "Note

Holder" or "Lender under the note and deed of trust, and that they failed to comply with

certain procedures that the note and the deed of trust required them to complete before they

could attempt to foreclose on her home. These requirements include sending a 30-day notice

of default and giving notice of the default to the trustee.

Respondents attempt to characterize these allegation as "show-me-the note" argument.

However, Steinberger does not argue that the true beneficiary must show the note prior to

foreclose.  Instead, she argues that prior to initiating foreclosure proceedings, the true

beneficiary or trustee must at least follow the enforcement provisions contained in the note and

deed of trust. Here, Steinberger contends that if Respondents are in fact the true beneficiaries

or trustees of the deed of trust, their failure to comply with these provisions constitutes breach

of the note and deed of trust. These allegations specially allege breach of the deed of trust and

promissory note.

Moving Defendants arguments that these allegations are somehow legal conclusions, or

that they do not state a claim, are contradicted by on-point law which this Court must follow.

White v Aurora Loan Services, LLC, 2014 WL 5080904 at *4-6 (D.Ariz. Oct. 9,

2014)(holding, based on Steinberger, that claims for unconscionability and lack of authority to conduct a trustee's sale were well-pled and admonishing Nationstar and Aurora to research Arizona law before filling any dispositive motions, and to cite "on-point controlling legal authority like Steinberger.") (Emphasis supplied.)

According to the Defense, Plaintiffs cannot state any claim premised on allegations that the Defendants are not the proper parties to enforce the Note and Deed of Trust. In spite of the fact that several on-point Arizona cases clearly provide that a borrower can plead a valid cause of action to prevent/avoid a trustee's sale based on lack of authority to conduct such sale as Steinberg v McVey ex rel. County of Maricopa, 234 Ariz  and Steinberger 318 P.3d at 429 q.38.

The Defendants would have this Court believe that only the statutes need to be followed in order to conduct a valid foreclosure sale. A reading of the statute themselves, belies this position. A.R.S. §33-807 (A), requires a default under the contract before foreclosure can be initiated. Whether a default has occurred can be determined only by interpreting the Note and the Deed of Trust. Those contracts are clear:  only the Lender can declare a default, only the Lender is secured by the Deed of Trust, only the Lender can notify the trustee that "deed of trust sale are conducted on a contract theory under the power of sale authority of the trustee." In re Krohn, 203 Ariz. 205, 208, 52 P.3d 774, 777 q8 (En Banc 2002) Conditions precedent to foreclosure found in the Deed of Trust must be followed as long as those terms do not contradict the deed of trust status.  Krohn, 203, Ariz. At 212, 52 P.3 at 781.

That being said, the Castellanos find it telling that the Moving Defendants never reveal who allegedly possess the Note. In order to demonstrate that status of Lender, the only entity which can be clear default under this loan and tell the trustee to foreclose, that entity must

show that it is the Note Holder as defined, and the DOT must be assigned to the same entity. The Moving Defendants claim that the loan is in that Trust. Under the terms of the Trust the note had to be turned over to the Trust by the closing date March 30, 2007.

The Moving Defendants claim that even though the DOT requires the Lender to send written default notice to the trustee of the deed of trust that such notice can instead be sent by an agent of the Lender/Note Holder. Not so. The DOT does not mentions in certain places, that the Lender or its agent can perform an act. But when the Lender's duty to write to the trustee notifying the trustee occurrence of an event of default and of Lender's election to foreclosure on the property is described, the words "or its agent" do not appear. Under the doctrine of "expressi uni us exclusion alterius," the failure of Paragraph 22 to state an agent can perform those acts, means an agent cannot perform those acts. Cent. Hous. Inv. Corp v Fed. Nat. Mortg. Ass'n, 74 Ariz. 308, 310-11, 248 P.2d 866, 867 (1952). Therefore lenders must strictly comply with the Deed of Trust status, and the statutes and the Deeds of Trust must strictly construed in favor of the borrower. Patton v First Fed. Sav. & Loans Ass'n, 118Ariz. 472, 477, 578 P.2d 152, 156 (in Banc 1978)

The Castellanos have plausibly alleged that no Defendant is the Lender/Note Holder, and no Defendant is secured by the DOT. Plaintiffs have alleged that the servicer cannot be an agent for U.S. Bank and U.S. Bank  as successor by merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE3 by JP Morgan Chase Bank, National Association. U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates,

Series 2007-HE3 is not the agent of the Lender. These well-pled allegation must be accepted as true.

In a recent Arizona Case Decision By H. Russel Holland United States District Judge for the case of Jay N. Gardner v Nationstar Mortgage, LLC, et 2:13 cv-1641-HRH consolidated with 2:13-cv-2478-HRH

**Allegations that Defendants are not the Lender on Note Holder**

**Plaintiffs have alleged that the person who signed the First Assignment was not authorized to do so. Plaintiffs have pled a plausible claim that the First Assignment was invalid.  It appears to the court that plaintiffs are challenging more than the MERS system. They are challenging the authority of the people who were actually signing documents for MERS. The court concludes for purpose of the motions to dismiss that plaintiffs have stated a plausible claim that defendants laced authority to conduct the trustee's sale (presently noticed but held in abeyance) because the First Assignment was not valid.**

In addition, "Collen Irby" who signed the documents of the Castellanos' is a known rob-signer who has signed a multitude of documents not to mention assignment, foreclosure documents with different signatures. Plaintiffs will be submitted a declaration with the numerous different signatures of "Colleen Irby."

Under recent on-point Arizona state law, the Castellanos have stated claims under A.R.S. 33-420 as to invalidly recorded documents. See Steinberg V McVey ex rel. County of Maricopa, 234 Ariz. & Stauffer v U.S. Bank NA., 233 Ariz 22, 308 P.3d 1173 (Ct. App 2013). Under Steinberg V McVey ex rel. County of Maricopa, 234 Ariz. & Stauffer, recorded foreclosure documents including an assignment of deed of trust, a notice of substitution of trustee, and a notice of trustee's sale, are all documents covered by the statute. 308 P.3d at 1177-78q15. The

14

court specifically found that even though the borrowers had not paid off their loan obligation, they were still "owners" of the property under the statute, and could therefore assert a claim. 308 P3d at 1179q22.

The Ninth Circuit has faithfully applied Steinberg v McVey ex rel. County of Maricopa, 234 Ariz, & Stauffer, and reversed the Arizona District Court which had dismissed claims under A.R. S. 33-420 for recording of false assignments, notices of substitution of trustee, and notice of trustee's sale. In re Mortgage Elec. Registration Systems, Inc. 754 F.3d 772, 782-83 (9th Cir 2014). The Ninth Circuit found that plaintiffs alleged the documents were forged because they were "rob signed," that notices of trustee's sale were notarized in blank and later singed by individuals not named in the document, and for other reasons, the plaintiffs stated claims under the statute, Id at 783 The Ninth Circuit found these allegations "plausibly suggested an entitlement to relief, city Ashcroft v Iqbal, 556 U.S. 662, 681, 129 S. Ct 1937 (2009), Id at 784.

In re Kirland, 915 F. 2d 1236, 1238-39 (9th Cir. 1990) plaintiff must plead materiality to state a claim for recording of "forged," "groundless," or "otherwise invalid." Documents. In recent Arizona Court of Appeal cases and recent Ninth Circuit case found that defendants recorded invalid documents without conducting any materiality analysis. See Williamson v PVOrbit, Inc., 236 P. 3d77, 80 (Ariz Ct. App 2011) (concluding that subcontractor's lien was "invalid" on the basis of A.R.S. § 33-1002's owner-occupant exception without any materiality analysis); Delmastro & Eells v Taco Bell Corp, 263 P. 3D 683, 691 (Ariz. Ct. App 2011) (mechanic's lien was invalid "because the description of the jobsite and labor and materials it had provided in its preliminary notices were legally inadequate" under A.R.S. §§ 33-981- (D), 33-992.01 (B), and summary judgement for plaintiff was proper under A.R.S. §33-420 (A)

15

because defendant had reason to know if invalidity; no analysis of whether invalidity was "material"); In re Mortg, Elec Registration Sys., Inc.754 F. 3d 772, 783-84 (9th Cir 2014) (allegations that defendants' recorded documents were "invalid because they [we] re 'robo-signed (forged)'" sufficiently to state a claim under . § 33-420 (A) without any analysis of materiality).

In Sitton, 311 P 3d at 243 (citations and quotation mars omitted). In light of the three specific terms that precede "otherwise invalid" and the fact that "material" only modifies "misstatement or false claim," the phrase "otherwise invalid." Invalid, BLACK'S LAW DICTIONARY (10 ed 2014); see e.g. State v Taylor, 312 P. 2 162, 164 (Ariz 1957) (demonstrating that the use of word "otherwise" sometimes results in broadening, rather than narrowing, of the words that precede it, depending on the context in which it is used).

Invalid means "[n]ot legally binding." Invalid, BLACK'S LAW DISCTIONARY (10TH ED. 2014).

**D.**    The Moving Defendants make no argument regarding the well-pled claim for Breach of Contact and Breach of the Duty of Good Faith and Fair Dealing. Therefore, the Motion pertaining to Count 2 and Count 3 must be allowed to stand.

**E.**   <u>Amendments Should be Allowed if Any Claims Are Dismissed.</u>

In the event this Court dismisses any Count of the FAC, Plaintiffs request leave to amend to rectify the deficiencies. Lopez v Smith, 203 F.3d 122, 1127 (9th Cir. 2000)(leave to amend should be granted unless the pleading could not possible be cured by the allegation of other facts).

## IV.    CONCLUSION

Based on the foregoing, the Castellanos respectfully request that the Motion be denied in its entirety, and that they be allowed to move forward on the merits of all their claims and seek the declaratory and other relief requested. In the event any portion of the Motion is granted, Plaintiffs request leave to amend. Plaintiffs also seek to Consolidation pursuant to F.R. Civ P. 42 Consolidation; Separate Trials LR Civ 42.1 to combine the similar causes of action.

RESPECTFULLY SUBMITTED this 27 day of November

By:

Judith Castellanos and Pablo Castellanos

Pro Se Plaintiffs

Pablo and Judith   Castellanos
16809 S. 44th Street
Phoenix,, Arizona 85048
480-205-4035
Judy.Castellanos@hotmail.com