Brian C. Lake (#020543)
Kendra L. Haar (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KHaar@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Defendant Performance Credit,*
*LLC f/k/a Encore Credit Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>ENCORE CREDIT CORPORATION, *et al.*,<br><br>Defendants. | No. 2:17-CV-02428-PHX-SPL<br><br>**DEFENDANT PERFORMANCE CREDIT, LLC F/K/A ENCORE CREDIT CORP. REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendant PERFORMANCE CREDIT, LLC f/k/a ENCORE CREDIT CORP. ("Defendant" or "Encore") by and through undersigned counsel, respectfully requests, under Federal Rule of Evidence 201 ("Rule 201"), that this Court take judicial notice of the documents listed below in connection with the Defendant's Motion for Judgment on the Pleadings, which is filed concurrently with this request.

Rule 201 allows a court to take judicial notice of documents outside of the complaint that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Courts routinely take

judicial notice of loan documents in foreclosure cases, particularly where the documents have been recorded, are a matter of public record, and their authenticity is not contested. *See, e.g., Kuc v. Christiana Trust ARLP 3*, No. CV-15-08136-PCT-DLR, 2016 WL 74712, at *1 n.2 (D. Ariz. Jan. 7, 2016), *citing Sparlin v. Select Portfolio Servicing, Inc.*, 2012 WL 527486, at *8 (D. Ariz. Feb. 17, 2012).

The documents attached were all recorded in the official records of the Maricopa County Recorder's Office, related to the Property at issue in this action:

- Attached as **Exhibit A**, is a true and correct copy of the 2016 Trustee's Deed, filed in the official records of the Maricopa County Recorder's Office on July 29, 2016 as document number 20160541587 and indicating that Defendant Encore was not a party to this sale.

- Attached as **Exhibit B**, is a true and correct copy of the Assignment of Deed of Trust assigning Defendant Encore's interest in the Property at issue to U.S. Bank N.A. on January 30, 2012, filed in the official records of the Maricopa County Recorder's Office on February 10, 2012 as document number 20120111453.

- Attached as **Exhibit C**, is a true and correct copy of the Encore Deed of Trust filed with the Maricopa County Recorder's Office on February 7, 2007 as document number 20070156567. [Ex. 1 to the Compl., Doc 1-1]

- Attached as **Exhibit D**, is a true and correct copy of the first Notice of Trustee's Sale filed with the Maricopa County Recorder's Office on January 20, 2011 as document number 20110053804. [Ex. 15 to the Compl., Doc 1-1]

- Attached as **Exhibit E**, is a true and correct copy of the cancellation of the first Notice of Trustee's Sale filed with the Maricopa County Recorder's Office on May 19, 2011 as document number 20110421682. [Ex. 19 to the Compl., Doc 1-1]

- Attached as **Exhibit F**, is a true and correct copy of the Notice of Trustee's sale filed by Quality Loan Service Corporation on January 15, 2016 with the Maricopa County Recorder's Office as document number 20160031431.

CV2016-008151

On a motion to dismiss, the Court may take judicial notice of matters of public record outside the pleadings without converting the motion to a summary judgement motion. *See, e.g., MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, [the court] may take judicial notice of matters of public record outside the pleadings."); *see also Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) ("In deciding whether to dismiss a claim under Fed. R. Civ. P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record."); *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987) ("[F]acts subject to judicial notice may be considered on a motion to dismiss.").

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court take judicial notice of the attached documents and contents contained therein.

Dated: November 28, 2018

**PERKINS COIE LLP**

By: /s/ *Kendra L. Haar*
    Brian C. Lake
    Kendra L. Haar
    Suite 2000
    2901 North Central Avenue
    Phoenix, Arizona  85012-2788

    Attorneys for Defendant

CV2016-008151

**CERTIFICATE OF SERVICE**

☒      I hereby certify that on November 28, 2018, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Daniel Price Crane
Bryan Cave LLP
dan.crane@bryancave.com
Attorney for JP Morgan Chase Bank NA

Jacob Alexander Maskovich
Bryan Cave LLP
jamaskovich@bryancave.com
Attorney for JP Morgan Chase Bank NA

Mellisa Robbins Coutts
Devan E. Michael
McCarthy Holthus LLP
mcoutts@mccarthyholthus.com
dmichael@mccarthyholthus.com Attorney
for Quality Loan Servicing California
Reconveyance Company

Judith T Castellanos
judy.castellanos@hotmail.com

Plaintiffs *Pro Se*

☒      I hereby certify that on November 28, 2018, I served the attached document by first class mail on Judge Steven P. Logan, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

☒      I hereby certify that on November 28, 2018, I served the attached document by first class mail on the following:

Judith T Castellanos
Pablo A Castellanos
16809 S 44th St.
Phoenix, AZ 85048

Plaintiffs *Pro Se*

s/ Susan Carnall

142143572.2

# Exhibit A

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20160541587   07/29/2016   03:54
ELECTRONIC RECORDING

150246437TDUS-4-1-1--
Wadel

Recording requested by:

When recorded mail to:

Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr.
Salt Lake City, UT 84119

Forward tax statements to the address given above

TS No.: **AZ-15-687449-RY**
Title Order No.: **150246437-AZ-VOI**

Space above this line for recorders use

AFFIDAVIT OF VALUE EXEMPT PURSUANT
TO A.R.S SECTION 11-1134 (B) (1).

# Trustee's Deed Upon Sale

APN No.: 301-69-627 5

Transfer Tax: $0.00

The Grantee Herein **IS** the Foreclosing Beneficiary
The amount of the unpaid debt together with costs was:                    **$425,239.15**
The amount paid by the grantee at the trustee sale was:                    **$225,250.00**

Said property is in the City of: PHOENIX, County of MARICOPA.

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2007-HE3, Asset-Backed Certificates Series 2007-HE3**

(hereinafter "Grantee") but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of MARICOPA, State of ARIZONA, described as follows:

LOT THREE HUNDRED SIXTY EIGHT (368), PECOS WEST, ACCORDING TO THE PLATE OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 294 OF MAPS, PAGE 31; AND AFFIDAVIT OF CORRECTION RECORDED MAY 2, 1986 IN DOCUMENT NO. 86-218044. TOGETHER WITH AN EASEMENT FOR SEWER LINE PURPOSES, AS SET FORTH IN INSTRUMENT RECORDED AUGUST 21, 1985 IN DOCUMENT NO. 85-396496.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**, as Trustor, dated **1/19/2007**, and recorded on **2/7/2007** as **Instrument No. 2007-0156567** and re-recorded on 6/28/2011 as Instrument Number 20110536116 of Official Records in the office of the Recorder of **MARICOPA, ARIZONA**, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Sale under the Deed of Trust recorded on 1/15/2016, instrument no 20160031431 of Official records. Trustee having complied with all applicable statutory requirements of the State of Arizona and

http://recorder.maricopa.gov/recdocdata/verify.cert.aspx?id=210427 [20160541587] 5 Pages

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210427 [20160541587] 5 Pages

performed all duties required by the Deed of Trust including sending a Notice of Sale within five days by certified mail, postage pre-paid to each person entitled to notice in compliance with A.R.S. section 33-809.

All requirements per Arizona Statutes regarding the mailing, personal delivery and publication of copies of Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **7/20/2016**.  The foreclosing beneficiary, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$225,250.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust, and instructed Trustee to vest this Trustee's Deed Upon Sale to said Grantee.

This conveyance is made without representations or warranties of any kind, expressed or implied. By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the current Trustee made no representations to Grantee concerning the Property and that the current Trustee owed no duty to make disclosures to Grantee concerning the Property, Grantee relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property.

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

In witness thereof, **QUALITY LOAN SERVICE CORPORATION**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.:  AZ-15-687449-RY

Date:                                                    **QUALITY LOAN SERVICE CORPORATION**

7-28-16

By: Yadira Jimenez, Assistant Secretary

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of:  **California**)

County of: **San Diego**)

On ___JUL 2 8 2016___ before me, ___Brenda A. Gonzalez___ a notary public, personally appeared ___Yadira Jimenez___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    **(Seal)**

Signature  Brenda A. Gonzalez

**BRENDA A. GONZALEZ**
Commission No. 2116627
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires June 21, 2019

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210427 [20160541587] 5 Pages

TS No.: AZ-15-687449-RY

## **Grantee Contact Information**

Grantee is incorporated, organized, licensed, chartered, formed and/or registered in the State and Country reflected in the address block below:

U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns
Asset Backed Securities I Trust 2007-HE3, Asset-Backed Certificates Series 2007-HE3
c/o Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr. , ,
Salt Lake City, UT 84119
United States of America

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210427 [20160541587] 5 Pages

20160541587
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  11/28/2018 01:35:12 PM

By _____Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210427

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210427 [20160541587] 5 Pages

# Exhibit B



```
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2012-0111453 02/10/12 01:33 PM
54 OF 91
                              BARC1AC
```

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 19183482

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210425 [20120111453] 2 Pages

## ASSIGNMENT OF DEED OF TRUST

-- -- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ENCORE CREDIT CORP., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2007-HE3, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Said Deed of Trust made by PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS and recorded in Book n/a at Page n/a as Document # 2007-0156567 in the office of the County Recorder of MARICOPA Arizona.

IN WITNESS WHEREOF, this Assignment is executed on 01,30, 2012 (MM/DD/YYYY),

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ENCORE CREDIT CORP., ITS SUCCESSORS AND ASSIGNS

By: 
     Natasha Price
     Vice President

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 01,30, 2012 (MM/DD/YYYY), by Natasha Price as Vice President for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ENCORE CREDIT CORP., ITS SUCCESSORS AND ASSIGNS, who, as such Vice President being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



MIRANDA AVILA
Notary Public - State of FLORIDA
Commission expires: 08/22/2014

Miranda Avila
Notary Public State of Florida
My Commission # EE 019063
Expires August 22, 2014

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS 15666472 -- EMC CJ3521120  MIN 100180100003887294 MERS PHONE 1-888-679-MERS FORM5\FRMAZ1

*15666472*

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210425 [20120111453] 2 Pages

20120111453
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  11/28/2018 01:35:11 PM

By _____ Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210425

Exhibit C



RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

Recording Requested By:
ENCORE CREDIT CORP.

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2007-0156567 02/07/07 10:52 AM
3 OF 3

BLOCKNUMBERS

And After Recording Return To:
ENCORE CREDIT CORP.
1833 ALTON PARKWAY
IRVINE, CALIFORNIA 92606
Loan Number: 388729

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [2007015657] 20 Pages

─────── [Space Above This Line For Recording Data] ───────

# DEED OF TRUST

**MIN:** 100180100003887294

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   JANUARY 19, 2007          , together with all Riders to this document.
**(B)** "**Borrower**" is   PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP.

Borrower is the trustor under this Security Instrument.  Borrower's mailing address is   16405 SOUTH 43RD PLACE, PHOENIX, ARIZONA 85048

**(C)** "**Lender**" is   ENCORE CREDIT CORP.

Lender is a   CALIFORNIA CORPORATION                                          organized
and existing under the laws of   CALIFORNIA
Lender's mailing address is   1833 ALTON PARKWAY, IRVINE, CALIFORNIA 92606

**(D)** "**Trustee**" is   FIDELITY NATIONAL TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION

Trustee's mailing address is   17911 VON KARMAN AVENUE, #300, IRVINE, CALIFORNIA 92614

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 1 of 14

DocMagic €Farmæs 800-649-1362
www.docmagic.com

Az3003.mzd.1.tem

MCR 1 of 20

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?d=210405 [20070156567] 20 Pages

(F)  "Note" means the promissory note signed by Borrower and dated   JANUARY 19, 2007
The Note states that Borrower owes Lender   THREE HUNDRED TWELVE THOUSAND AND
00/100                        Dollars (U.S. $  312,000.00        ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2037 .
(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☒ Other(s) [specify] | |

PREPAYMENT RIDER TO SECURITY INST

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    *DocMagic* *EFarmms* 800-649-1362
Form 3003 1/01 (rev. 6/02)                              Page 2 of 14                                      www.docmagic.com

Az3003.mzd.2.tcm

MCR 2 of 20

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?d=210405 [20070156567] 20 Pages

the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                            of                          MARICOPA
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 301-69-627

which currently has the address of   16405 SOUTH 43RD PLACE
                                                              [Street]

        PHOENIX                    , Arizona        85048        ("Property Address"):
        [City]                                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    *DocMagic* *eForms* 800-649-1362
Form 3003 1/01 (rev. 6/02)                           Page 3 of 14                                    *www.docmagic.com*

Az3003.mzd.3.tem

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                   Page 4 of 14

DocMagic  *800-649-1362*
www.docmagic.com

Az3003.mzd.4.tem

MCR 4 of 20

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 5 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Az3003.mzd.5.tem

MCR 5 of 20

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                           Page 6 of 14

*DocMagic* *€Farms* 800-649-1362
www.docmagic.com

Az3003.mzd.6.tem

MCR 6 of 20

material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                                Page 7 of 14

DocMagic <span>Phone: 800-649-1362</span>
www.docmagic.com

Az3003.mad.7.tem

MCR 7 of 20

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [2007015567] 20 Pages

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                         Page 8 of 14

*DocMagic* *eFormula* 800-649-1362
*www.docmagic.com*

Az3003.mzd.8.tem

MCR 8 of 20

http://recorder.maricopa.gov/recodocdata/verify/cert.aspx?id=210405 [20070156567] 20 Pages

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 9 of 14

*DocMagic* ☎ 800-649-1362
www.docmagic.com

Az3003.mzd.9.tem

MCR 9 of 20

20070156567

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 10 of 14

DocMagic *EFormas* 800-649-1362
www.docmagic.com

Az3003.mad.10.tem

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                          Page 11 of 14                          DocMagic *eForms* 800-649-1362
                                                                                          www.docmagic.com

Az3003.mzd.11.tem

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 12 of 14

DocMagic *eFormas* 800-649-1362
www.docmagic.com

Az3003.mzd.12.tem

2007015657

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JUDITH T CASTELLANOS          -Borrower

_____ (Seal)
PABLO A CASTELLANOS          -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

Witness:

Witness:

_____

_____

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)          Page 13 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Az3003.wzd.13.tem

http://recorder.maricopa.gov/recocdata/verifycert.aspx?id=210405 [2007015657] 20 Pages

2007015656?

State of Arizona
County of  *Maricopa*

The foregoing instrument was acknowledged before me this  *22nd Jan 2007*
by   JUDITH T CASTELLANOS  AND PABLO A CASTELLANOS

*Carol Fish*
_____
Signature of Person Taking Acknowledgment

*Notary*
_____
Title

OFFICIAL SEAL
CAROL FISHER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 10, 2010

_____
Serial Number, if any

(Seal)

My commission expires:  *4/10/2010*

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 14 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ax3003.mzd.14.tem

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [200701565667] 20 Pages

MIN: 100180100003887294                              Loan Number: 388729

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
### - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th day of JANUARY, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ENCORE CREDIT CORP., A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

16405 SOUTH 43RD PLACE, PHOENIX, ARIZONA 85048
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of      7.190 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A)    Change Dates**
The interest rate I will pay may change on the 1st day of FEBRUARY, 2010, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
    **(B)    The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                    Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3138.rid.1.tem

MCR 15 of 20

(C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 250/1000 percentage points ( 5.250 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.190 % or less than 7.190 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 12.190 %.  My interest rate will never be less than 7.190 %.

(E)   Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                          Page 2 of 3

DocMagic €₣₨₦₥₨ 800-649-1362
www.docmagic.com

Us3138.rid.2.tem

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JUDITH T CASTELLANOS    -Borrower

_____ (Seal)
PABLO A CASTELLANOS    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                               Page 3 of 3

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Us3138.rid.3.tem

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156667] 20 Pages

http://recorder.maricopa.gov/recdocdata/verifygcert.aspx?id=210405 [2007015667] 20 Pages

# PREPAYMENT RIDER

Loan Number: 388729

Date: JANUARY 19, 2007

Borrower(s): JUDITH T CASTELLANOS , PABLO A CASTELLANOS

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date herewith (the "Security Instrument") executed by Borrower, as trustor or mortgagor, in favor of ENCORE CREDIT CORP., A CALIFORNIA CORPORATION                                                                                  ("Lender"), as beneficiary or mortgagee. To the extent that the provisions of this Prepayment Rider (the "Rider") are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within    TWELVE    ( 12    ) months from the date of execution of the Security Instrument I make a full Prepayment or, in certain cases a partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds TWENTY PERCENT ( 20.000 %) of the original Principal amount of this loan, I will pay a Prepayment charge in an amount equal to the payment of SIX    ( 6    ) months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds TWENTY PERCENT    ( 20.000 %) of the original Principal amount of the loan.

IN WITNESS WHEREOF, the Borrower has executed this Rider on the    22    day of Jan 2007

_____  1/22/07       _____  01/22/07
Borrower  JUDITH T      Date       Borrower  PABLO A      Date
CASTELLANOS                              CASTELLANOS

_____  _____       _____  _____
Borrower           Date       Borrower           Date

_____  _____       _____  _____
Borrower           Date       Borrower           Date

MULTISTATE PREPAYMENT RIDER                                               1/01
Document Systems, Inc. (800) 649-1362

Uspr.ghf

20070156567

# EXHIBIT A

LOT THREE HUNDRED SIXTY EIGHT (368), PECOS WEST, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 294 OF MAPS, PAGE 31; AND AFFIDAVIT OF CORRECTION RECORDED MAY 2, 1986 IN DOCUMENT NO. 86-218044.

TOGETHER WITH AN EASEMENT FOR SEWER LINE PURPOSES, AS SET FORTH IN INSTRUMENT RECORDED AUGUST 21, 1985 IN DOCUMENT NO. 85-396496.

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405 [20070156567] 20 Pages

20070156567
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest: 11/28/2018 11:43:44 AM

By _____Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210405

# Exhibit D

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20110053804   01/20/2011   08:14
ELECTRONIC RECORDING

973591-2-14-9--
Hoyp

_Space above this line for recorder's use only_

Title Order No. 110024185-AZ-MAI  **Trustee Sale No. 145006AZ**  Loan No. 0019183482

# NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust Recorded 02-07-2007, Book N/A, Page N/A, Instrument 2007-0156567 in the records of MARICOPA, County, Arizona, at public auction to the highest bidder at AT THE MAIN ENTRANCE OF THE SUPERIOR COURT BUILDING, 201 WEST JEFFERSON, PHOENIX, AZ, on 04-21-2011 at 12:30 PM of said day.

Legal description: : LOT THREE HUNDRED SIXTY EIGHT (368), PECOS WEST, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 294 OF MAPS, PAGE 31; AND AFFIDAVIT OF CORRECTION RECORDED MAY 2, 1986 IN DOCUMENT NO. 86-218044. TOGETHER WITH AN EASEMENT FOR SEWER LINE PURPOSES, AS SET FORTH IN INSTRUMENT RECORDED AUGUST 21, 1985 IN DOCUMENT NO. 85-396496.
Tax Parcel Number: 301-69-627 5
The Deed of Trust and/or Beneficiary provides the following purported property location:
    16405 SOUTH 43RD PLACE
    PHOENIX, AZ 85048

The original principal balance of the note is $312,000.00.   Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before 5:00 p.m. on the last day other than a Saturday or legal holiday before the date of sale. The purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price bid no later than 5:00 p.m. of the following day, other than a Saturday or legal holiday.

NAME AND ADDRESS OF ORIGINAL TRUSTOR: PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP 16405 SOUTH 43RD PLACE  PHOENIX, AZ 85048

NAME AND ADDRESS OF PRESENT BENEFICIARY: Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE3 c/o JPMorgan Chase Bank, National Association, 7301 BAYMEADOWS WAY JACKSONVILLE, FL 32256

NAME AND ADDRESS OF CURRENT TRUSTEE: CALIFORNIA RECONVEYANCE COMPANY
, 9200 Oakdale Avenue CA2-4379 Chatsworth, CA 91311, 800 892-6902

http://recorder.maricopa.gov/recdocdata/verify.cert.aspx?id=210406 [20110053804] 3 Pages

MCR 1 of 3

20110053804

Title Order No. 110024185-AZ-MAI   **Trustee Sale No. 145006AZ**   Loan No. 0019183482

*Manner of Qualification: a corporation all the stock of which is owned by or held solely for the benefit of a national bank, pursuant to ARS 33-803(A)(5) and (6).*
*Name of trustee's regulator: Office of the Comptroller of the Currency*

Date: 1/19/11

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
Sale Information:  (714) 573-1965 or www.priorityposting.com

PETRA VAZQUEZ, ASSISTANT SECRETARY

> CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO
> COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On 1/19/11 before me, CARLA DODD, "Notary Public" personally appeared PETRA VAZQUEZ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Carla Dodd*                (Seal)

CARLA DODD
Commission # 1893390
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2014

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210406 [20110053804] 3 Pages



20110053804
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES

The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  11/28/2018 11:49:43 AM

By _____ Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210406

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210406 [20110053804] 3 Pages

Exhibit E

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20110421682   05/19/2011   08:06
ELECTRONIC RECORDING

1084532-2-15-3--
Hoyp

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

Title Order No. 110024185-AZ-MAI   Trustee Sale No. 145006AZ   Loan No. 0019183482

## CANCELLATION OF NOTICE OF SALE
### Of Declaration of Default and Demand for Sale
### and of Notice of Breach and Election to Cause Sale

NOTICE IS HEREBY GIVEN:  That CALIFORNIA RECONVEYANCE COMPANY. is the duly appointed Trustee under the following described Deed of Trust:

TRUSTOR:   PABLO A. CASTELLANOS AND JUDITH T. CASTELLANOS, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP

BENEFICIARY:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, ENCORE CREDIT CORP., ITS SUCCESSORS AND ASSIGNS.

Recorded 02-07-2007, Book N/A, Page N/A, Instrument 2007-0156567 of official records in the Office of the Recorder of MARICOPA County, Arizona, describing the land therein: LOT THREE HUNDRED SIXTY EIGHT (368), PECOS WEST, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 294 OF MAPS, PAGE 31; AND AFFIDAVIT OF CORRECTION RECORDED MAY 2, 1986 IN DOCUMENT NO. 86-218044. TOGETHER WITH AN EASEMENT FOR SEWER LINE PURPOSES, AS SET FORTH IN INSTRUMENT RECORDED AUGUST 21, 1985 IN DOCUMENT NO. 85-396496.

WHEREAS:  The Beneficiary under that certain Deed of Trust hereinabove described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and WHEREAS:  Notice was heretofore given by the Beneficiary, of breach of the obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described,

NOW THEREFORE:  Notice is hereby given that the Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this cancellation shall not in any manner be construed as waiving or affecting any breach or default past, present or future, under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall in no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210407 [20110421682] 3 Pages

Title Order No. 110024185-AZ-MAI   Trustee Sale No. 145006AZ   Loan No. 0019183482

obligations secured thereby are hereby reinstated and shall be said and remain in force the same as if said Declaration and Notice had not been made and given.  Said Notice was recorded on 01-20-2011 as Instrument 20110053804, Book , Page , of official records in the Office of the Recorder of MARICOPA County, Arizona.

DATE: 5/18/11

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

PETRA VAZQUEZ, ASSISTANT SECRETARY

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On 5/18/11 before me, ZELMA THORPES, "Notary Public" personally appeared PETRA VAZQUEZ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Zelma Thorpes_ (Seal)

ZELMA THORPES
Commission # 1784854
Notary Public — California
Los Angeles County
My Comm. Expires Dec 13, 2011

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210407 [20110421682] 3 Pages

20110421682
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  11/28/2018 11:49:44 AM

By _____ Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210407

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210407 [20110421682] 3 Pages

# Exhibit F

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20160031431   01/15/2016   04:59
ELECTRONIC RECORDING

150246437N-3-1-1--
sarabiam

Recording requested by:

When recorded mail to:

Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

TS No.: AZ-15-687449-RY
Order No.: 150246437-AZ-VOI

Space above this line for recorders use

## Notice of Trustee's Sale

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 1/19/2007 and recorded 2/7/2007 as Instrument 2007-0156567, and re-recorded on 6/28/2011 as Instrument Number 20110536116   in the office of the County Recorder of MARICOPA County, Arizona. **NOTICE! IF YOU BELIEVE THERE IS A DEFENSE TO THE TRUSTEE SALE OR IF YOU HAVE AN OBJECTION TO THE TRUSTEE SALE, YOU MUST FILE AN ACTION AND OBTAIN A COURT ORDER PURSUANT TO RULE 65, ARIZONA RULES OF CIVIL PROCEDURE, STOPPING THE SALE NO LATER THAN 5:00 P.M. MOUNTAIN STANDARD TIME OF THE LAST BUSINESS DAY BEFORE THE SCHEDULED DATE OF THE SALE, OR YOU MAY HAVE WAIVED ANY DEFENSES OR OBJECTIONS TO THE SALE. UNLESS YOU OBTAIN AN ORDER, THE SALE WILL BE FINAL and** will occur at public auction to the highest bidder.

Sale Date and Time: **4/19/2016 at 12:00PM**

Sale Location: **In the courtyard to the Superior Court Building, located at 201 W. Jefferson Phoenix, AZ 85003**

Legal Description: **LOT THREE HUNDRED SIXTY EIGHT (368), PECOS WEST, ACCORDING TO THE PLATE OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 294 OF MAPS, PAGE 31; AND AFFIDAVIT OF CORRECTION RECORDED MAY 2, 1986 IN DOCUMENT NO. 86-218044. TOGETHER WITH AN EASEMENT FOR SEWER LINE PURPOSES, AS SET FORTH IN INSTRUMENT RECORDED AUGUST 21, 1985 IN DOCUMENT NO. 85-396496.**

Purported Street Address: **16405 SOUTH 43RD PLACE, PHOENIX, AZ 85048**

Tax Parcel Number: **301-69-627 5**

Original Principal Balance: **$312,000.00**

Name and Address of Current Beneficiary:

**U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2007-HE3, Asset-Backed Certificates Series 2007-HE3 C/O Select Portfolio Servicing, Inc.**

**3217 S. Decker Lake Dr.**

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210426 [20160031431] 4 Pages

MCR 1 of 4

Salt Lake City, UT 84119

Name(s) and Address(s) of Original Trustor(s):  **PABLO A. CASTELLANOS AND JUDITH T.
CASTELLANOS, HUSBAND AND WIFE, AS JOINT
TENANTS WITH RIGHT OF SURVIVORSHIP
16405 SOUTH 43RD PLACE,, PHOENIX, AZ 85048**

Name and Address of Trustee/Agent:  **Quality Loan Service Corporation
411 Ivy Street, San Diego, CA 92101
Phone: (866) 645-7711
Sales Line: 888-988-6736
Login to:  Salestrack.tdsf.com
AZ-15-687449-RY**

**The successor trustee qualifies to act as a trustee under A.R.S. §33-803(A)(1) in its capacity as a licensed
Arizona escrow agent regulated by the Department of Financial Institutions.**

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall
be entitled only to a return of the monies paid to the Trustee.  This shall be the Purchaser's sole and exclusive
remedy.  The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the
Beneficiary's Agent, or the Beneficiary's Attorney.  As required by law, you are hereby notified that a negative
credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms
of your credit obligations.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for
this loan in which case this letter is intended to exercise the note holders right's against the real property only.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: AZ-15-687449-RY

Dated: 1/13/16                                   QUALITY LOAN SERVICE CORPORATION

By: **Michelle Brodowicz, Assistant Secretary**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of: **California**)

County of: **San Diego**)

On ___ JAN 1 3 2016 ___ before me, ___ COURTNEY PATANIA ___ a notary public, personally appeared ___ Michelle Brodowicz ___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___

COURTNEY PATANIA
Commission # 2044156
Notary Public - California
San Diego County
My Comm. Expires Nov 1, 2017

**COURTNEY PATANIA**

20160031431
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest:  11/28/2018 01:35:12 PM

By _____Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210426

http://recorder.maricopa.gov/recdocdata/verifycert.aspx?id=210426 [20160031431] 4 Pages